LAW OFFICE OF ROBERT J. GUMENICK, PC
Robert J. Gumenick (RG 4199)
160 Broadway
Suite 1100
New York, New York 10038
Tel.: (212) 608-7478

Counsel to Uzi Evron, Roni Abud and, Doron Kessel

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
In re:

                                                                                       Case No.: 08-12667 (AJG)

Boaz Bagbag,

                                                                                       Chapter 7

                Debtor.
-----------------------------------------------------------------X

**RESPONSE TO APPLICATION OF THE UNITED STATES TRUSTEE FOR APPROVAL OF STIPULATION AND PROPOSED ORDER DISMISSING DEBTOR'S CHAPTER 7 CASE**

Uzi Evron, Roni Abudi, Doron Kessel and Asher Alcobi (collectively, "Movants"), creditors and parties-in-interest in the above-captioned case, by and through their attorney Robert J. Gumenick, Esq., as and for their response to the Motion of the United States Trustee for an order approving a Stipulation and Proposed Order Dismissing the Debtor's Chapter 7 case, represent and allege as follows:

**BACKGROUND OF THE TRUSTEE'S MOTION AND THE MOVANTS' POSITION**

This case is a companion case filed on the same day with Case No. 08-12666 (MG) in which the Debtor's wholly owned business, Pace Product Solutions, Inc. initially filed under Chapter 11. That case was converted to a case under Chapter 7 on July 24, 2008 by order of Bankruptcy Judge Glen (ECF 24). On July 31, 2008, the court so ordered a stipulation in that case modifying the automatic stay to permit Summa Capital Corporation ("Summa") to foreclose

1

on its collateral, which consisted of virtually all of its assets (ECF 31). Thereafter, Summa took possession of the Debtor's business premises and completed the sale of the collateral and, upon information and belief, the debtor and the Debtor, as guarantor, remain liable to Summa for sums well in excess of $1,000,000.00. Pace no longer conducts business.

After advising of various irregularities in the Debtor's transactions, creditors Uzi Evron, Roni Abudi and Doron Kessel (the "Movants") sought leave to take examinations of the Debtor and other individuals under Bank. R. 2004. Pursuant to the Order of this Court dated September 8, 2008 (the "Order"), this Court granted the Movant's motion and authorized the issuance of subpoenas to compel the Debtor's and other parties examination and to compel the production of documents.

Upon the issuance of the Order, subpoenas decus tecum were served upon the parties named in the Order. Examinations of the Debtor, his accountant Mark Goldberg, his attorney Jason Levine, his bookkeeper Larry Katz and his business associate Heby Abraham were held. Responses to the Movants' document requests were provided by Messrs. Levine and Goldberg. The Debtor provided a partial response to the document request and failed to respond to follow up requests. The Debtor has not produced its personal or business bank records and statements as requested. The "Quickbooks" records have not been produced in a form that is able to be reviewed by the Movants.

The following subpoenaed parties have not appeared: Shimon Avitan, Jeffrey M. Janklovits, Jim Matta, and Ruby Abramov a/k/a Rabah Abramov. It is believed that Mr. Abramov is a silent partner with the Debtor in numerous transactions, and that Mr. Avitan is a strawman used by the Debtor with the purpose of concealing assets. Jeffrey Janklovitz has agreed to be deposed at a later date. No response has been obtained from Mr. Matta.

2

It was also discovered that the Debtor has received business origination capital in a number of transactions from one Drori Benamin (sic), whose name was unknown to the Movants prior to the examinations.

**RESULTS OF THE MOVANT'S RULE 2004 EXAMINATIONS**

From the depositions conducted and the documents received, the following salient facts and circumstances were discovered:

1.  The Debtor testified that he owns 100% of the stock of a company called V.I.P. Car Service, Inc. ("VIP") to which 19 Lincoln Towncars and four other limousines are currently registered according to the results of an investigative report   The Debtor owns or leases a Cadillac Escalade, the source of which has not been disclosed.  VIP's business is the leasing of said limousines to drivers, who then hook-up with a base to take fares.  The Debtor refused to disclose the physical location of this company, its employees and telephone number, the location of the cars; the location of the bank account and the location of the books and records of the company.  It was also discovered that said Drori Benamin provided VIP startup capital and that the cars were financed.  The Debtor has refused to testify as to the amount of the loans outstanding to the company and the status of Mr. Benamin's involvement.  The Debtor refuses to indicate if the company still owns cars and if it still conducts business.  The Movants are owed about $95,000.00 from the Debtor and VIP for investments in the company made in August, September and October, 2006.

    A direct inquiry with VIP resulted in an investigator being told that all cars but one were presently leased out on a weekly basis, but that cars when available were leased to drivers for $500 per week.   The investigator also was told that Pace traded  auto parts

in exchange for repairs to VIP owned vehicles. This conduct mirrors the fact that loan repayments to investors in VIP were paid by checks drawn on Pace in 2005 and 2006.

2. The Debtor asserted in earlier sworn testimony that he is and always has been the owner 100% of Pace Product Solutions, Inc. ("Pace"). However, one Rabah Abramov is listed as the sole shareholder in Pace's 2005 and 2006 federal returns. The Debtor refuses to disclose his relationship with Mr. Abramov and the amount owed to him and how his equity stake in Pace was satisfied. Mr. Abramov refuses to honor the subpoena served upon, despite his acknowledging service to the Movants.

It was also discovered that the Debtor and Mr. Abramov are involved in one and possibly two condominiums in Aventura, Florida. Photocopies of checks payable to the Debtor in August, 2006 from Pine Projects, LLC totaling $327,000.00 were obtained with regard to the Aventura apartments. The Debtor's testimony regarding the checks and ownership on the units was evasive and inconclusive, it being impossible to learn from the Debtor the source of funds to obtain the apartments and the present status of the investments or his relationship with Mr. Abramov in connection with these and other investments.

As noted below, certain other transactions involve companies which, upon information and belief, are controlled by Rabah Abramov, such as Even Auto.

3. Public records indicate that judgments were rendered against Pace and Bagbag in the Supreme Court, New York County for $168,750.00 and for $61,779 in November and December, 2007. These judgment stem from Pace's failure to pay notes due to Pace Auto Parts, Inc., a company which sold Pace the assets located at its West 48th Street location in 2006. The landlord of West 48th Street is Sirota Holdings, a company also

4

controlled by the seller.   Documents produced by the Debtor's attorney show that Pace surrendered that location to its landlord in December, 2007 for a payment of $325,000 and the release from certain liabilities.   Contrary to custom, the payout was transmitted to the Debtor's attorney's IOLA account.   The Debtor's attorney provided evidence of wire transfers from his IOLA account in the amount of $131,458.98 and $94,000.00 to unnamed parties and checks for $25,000.00 to Pace on January 29, 2008 and on February 11, 2008, $34,491.00 to Pace on March 5, 2008, and $15,000.00 to Pace on March 17, 2008.  About $26,000 is unaccounted for, in addition to the wire transfers mentioned in the previous sentence.

An order of protection was rendered by the Hon. Karla Moskowitz in favor of the plaintiff in that action, Robin Fuchs Matta against the Debtor on May 17, 2007.   This request for an order of protection is consistent with concerns arising from conversations that the Movants have had with the Debtor's "associates" following their seeking Rule 2004 examinations in this case.

As noted below, the use of the Debtor's attorney's trust account as a clearinghouse for numerous payments due to the Debtor or Pace was a technique utilized on at least two other occasions for amounts of aggregating at least $900,000.00[1].   These funds may have been paid directly to the IOLA account in order to protect them from claims of creditors in not less than nineteen separate lawsuits by trade creditors, credit card accounts, vendors and suppliers from 1995 through 1998.

---

[1]These funds include (i) $325,000 for the Sirota lease surrender, (ii) approximately $175,000 for the investment by Alcobi in Pace; (iii) $150,000 from the refinancing of Commonwealth Avenue and (iv) $86,000 from the Movants' investments in the 11th Avenue lease.

5

4.  In or about May, 2007 Pace acquired the inventory of Flash Sales, Inc. at 122 School Street, Yonkers, New York, along with an interest in the company which owns the land and the warehouse located at the same address. As in the earlier acquisition on West 48th Street, a down payment was paid to the seller and notes were given for the balance. Pace immediately defaulted on the notes. In this case, the source of Pace's down payment for the inventory was its secured creditor, Summa Capital Corp, to whom Pace presently owes in excess of $1,000,000 after giving credit to the liquidation of its inventory. Pace alleged, as it did with respect to the purchase from the 48th Street seller, that the inventory was not correct and this constituted a complete defense to the payment of the notes. A conversation with Pace's attorney in that case disclosed that he withdrew on the grounds, among other things, that Pace could not provide any detailed account of the deficiencies in the inventory so to allow him to prosecute the action.

   In his deposition testimony on July 20, 2008, the Debtor indicated that Pace was in poor financial condition because, among other things, of carrying two locations. However, the two locations were carried only for two months. The Debtor at about the same time convinced an investor, Asher Alcobi, to pay about $175,000.00 for a one third interest in Pace based upon the Debtor's written assurances that the business was financially solvent and throwing off sufficient income to pay the investor a weekly salary, health insurance and bonus. However, the investor received no payout from Pace from the date of his investment to the date of Pace's Chapter 11 filing.

5.  The Debtor has refused to turn over the bank records of Pace. While he asserts that they were left at the School Street property when it was turned over to the trustee, the trustee's accountants assert that the banking records were missing from the drawers

6

marked with the names of the bank records when they took possession of the premises. As noted below, the Movants seek leave to subpoena these records.

6. In late 2007 and early 2008, the Debtor received about $90,000.00 from the Movants to invest in a store lease at 790 11th Avenue in Manhattan. The transaction was not completed and the money never returned to the Movants despite demand. Documents obtained show that the money was held in the Debtor's attorney's IOLA account and then disbursed by the attorney to Pace ($15,000.00), Bagbag ($25,000.00), Bagbag's former wife ($10,000.00), a creditor OK Petroleum Distribution Corp. ($28,227.18) OK's attorney ($1,500.00), and the Debtor's attorney ($2,500.00).

7. The Debtor mortgaged the property which it owned through a separate entity at 1351 Commonwealth Avenue, Bronx, New York in January, 2008. The proceeds of the financing were again funneled into the IOLA account of the Debtor's attorney. Prior to the financing, the property was transferred in at least two separate "no consideration" transfers to companies in which the Debtor's "associates" were involved. The $250,000.00 face amount loan was disbursed by the attorney on April 2, 2008 to Pace ($15,269.00); to Levine on April 2, 2008 ($5,000.00) with the balance unaccounted for. Like the other transfers from the IOLA account, these transactions need to be examined to see if they are recoverable by the estate.

8.. The Debtor was a principal of a company known as MHAP Inc. or Mazel Hai Auto Parts from approximately 1995 to 2005, when the company was abandoned after the Debtor was indicted in December, 2004 on state charges of auto parts counterfeiting which case, upon information and belief, has not been finally resolved. The Debtor's financial obligations arising from the dissolution of this company have not been

disclosed. Pace commenced the same line of business as MHAP shortly after the indictment.

9. A deposition of Pace's bookkeeper was taken and it was indicated that there were several accounts at Pace which were handled only by the Debtor. One account involving a large New Jersey based automobile retailer and parts supplier which, with another customer whose account was also exclusively handled by the Debtor, was used for bulk discount purchasing in combination with contra-accounts resulting only in payments to the automobile retailer and supplier and the other customer, with no or few transactions, upon information and belief, being balanced in favor of Pace. The bookkeeper's testimony was that it was unusual in his view for this account, and others, to be personally handled by the Debtor out of the ordinary course. Despite demand for production, no records relating to this account have been produced, it being suspected that the contra-accounts were never properly balanced and that a detailed examination would disclose possible improper transactions, which, upon information and belief, are in the range of $500,000.00.

10. A copy of a financial statement of the Debtor was provided showing value in Peninsula Apartments in Aventura, Florida of $1,200,000.00; in Mazel Hai Auto Parts of $250,000; four cars of $120,000 and $150,000 in cash. The statement also showed $4,000,000 in life insurance. The Debtor's testimony regarding this financial statement was evasive and not productive.

11. Documents show that the Debtor has two social security numbers and lives at an address that is not the address listed on the petition. The Debtor tendered numerous Pace and personal checks immediately prior to and post bankruptcy which were, upon

information and belief, never honored, among which is a May 27, 2008 personal check for $86,000; an August, 1, 2008 check for $61,198 and a check dated September 1, 2008 for $61,198, all on his personal account at Chase.

12. The Debtor's lifestyle and spending habits are currently not consistent with his stated financial position. These questionable expenses include numerous donations to synagogues and political campaigns, as well as first class airfare to Israel and five star hotel expenses that are inconsistent with the Debtor's testimony of his current assets, including two Manhattan rental apartments, indoor Manhattan parking, weekly cleaning service and other spending.

## CONCLUSION

From the foregoing and other information obtained by the Movants, it appears likely that the Debtor has improperly transferred substantial funds and made substantial preferences that can be recovered in this case.

Rather than dismiss the proceeding, the Movants believe that the court should properly allow the Movants to compel the testimony of Rabah Abramov and the other non-responding recipients of the movant's subpoenas and permit the issuance of a subpoena deuces tecum to Drori Benamin,. as well as permitting the issuance of a subpoena to JPMorgan Chase Bank for the Debtor's banking records. In addition, the Debtor should be required to comply with document requests made by the Movants' attorney by letters dated October 31, 2008 and November 5, 2008 and and not responded to by the Debtor's counsel which documents are essential for the completion of the Movants' review of the Debtor's financial affairs.

For the foregoing reasons, it is respectfully urged that the Trustee's motion to dismiss not be granted at this time and that the Movants be permitted to schedule a timetable for continuing Rule 2004 examinations and making such further motions and applications as may be appropriate upon the conclusion of the same.

Dated:   New York, New York
         November 18, 2008

>                           LAW OFFICE OF ROBERT J. GUMENICK, PC
>
>                           By:    /s/ Robert J. Gumenick
>
>                                  Robert J. Gumenick (RG 4199)
>                                  160 Broadway
>                                  Suite 1100
>                                  New York, New York   10038
>                                  (212) 608-7478
>
>                           Counsel to Uzi Evron, Roni Abudi and Doron Kessel