UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                     :        Chapter 7
                                          :
BOAZ BAGBAG,                              :        Case No. 08-12667 (MEW)
                                          :
                        Debtor.           :
------------------------------------------------------------x

### DECISION REGARDING MOTION TO ENFORCE DISCHARGE INJUNCTION WITH RESPECT TO NEW YORK STATE COURT JUDGMENT

APPEARANCES:

SHENWICK & ASSOCIATES
*Counsel for Debtor*
122 East 42nd Street
New York, New York 10168
  By: James H. Shenwick, Esq.

THE LAW OFFICES OF ETHAN GANC
*Counsel for Asher Alcobi*
99 Madison Avenue
New York, New York 10016
     By: Ethan Ganc, Esq.

  -and-

LAW OFFICES OF MARC E. BENGUALID, PLLC
*Counsel for Asher Alcobi*
330 West 38th Street
New York, New York 10018
  By:  Marc E. Bengualid, Esq.

**MICHAEL E. WILES**
**UNITED STATES BANKRUPCY JUDGE**

Boaz Bagbag (the "**Debtor**") is the debtor in a chapter 7 case that has been reopened for the limited purpose of considering the motion that is the subject of this decision.  The Debtor contends that the discharge injunction that he received in this chapter 7 case renders void *ab initio* a judgment entered against the Debtor in a New York State court proceeding brought by

Asher Alcobi. For the reasons set forth below, the Court will enter an Order that declares the state court judgment void and of no effect, but that permits further proceedings in the state court to decide certain issues that Alcobi has raised before this Court.

### Background

The Debtor once owned an interest in an auto parts company named Pace Product Solutions, Inc. ("**Pace**"). In 2007, Asher Alcobi purchased shares representing a one-third interest in Pace. However, after a dispute the Debtor agreed to repurchase the Pace shares from Alcobi. On June 24, 2008, the Debtor and Mr. Alcobi entered into an amended agreement concerning the terms of the repurchase.

On July 10, 2008 (only a few weeks after the execution of the amended agreement to repurchase the Pace stock), the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code. Pace filed a chapter 11 bankruptcy petition that same day; its case was later converted to a case under chapter 7.

On July 22, 2008, a proof of claim was filed in the Debtor's bankruptcy case in behalf of Asher Alcobi in the amount of $1,000,000, indicating that the basis for the claim was a stock purchase agreement. Alcobi alleged that he had been fraudulently induced to advance funds to Pace and/or the Debtor in the amount of approximately $177,000 to acquire stock. The attachment to the proof of claim also asserted that the claim was excepted from discharge by reason of fraud and/or false pretenses. However, under the Bankruptcy Code the alleged exception to discharge could only be established through the timely filing of an adversary proceeding and a determination by the Bankruptcy Court, in such an adversary proceeding, that the debt was not discharged. *See* 11 U.S.C. § 523(c); Fed. R. Bankr. P. 4007(a). Alcobi never filed such an adversary proceeding and the deadline for the filing of such a proceeding expired

2

on December 16, 2008. *See* Stipulation Extending Time to Object to Debtor's Discharge, Dischargeability of Debts and Any Claimed Exemptions and for Dismissal [Dkt. No. 25].

On December 1, 2008, the Debtor filed schedules listing his assets and liabilities. Schedule F listed Asher Alcobi as a creditor holding an unsecured nonpriority claim in the amount of $100,000. The Debtor indicated he was a co-debtor on the alleged claim, which was described as contingent and disputed. The claim was further described as having been incurred on various dates and based on the "purchase of interest in business."

On February 9, 2009, while the bankruptcy case was pending, the Debtor and Alcobi entered into a Payment, Settlement Agreement (the "**Settlement Agreement**"). The Settlement Agreement provided for the payment by the Debtor to Mr. Alcobi of $190,000 in two installments of $95,000 each, with the first installment due on September 10, 2009 and the second on September 20, 2010. The Settlement Agreement did not specifically describe what issues were being settled. Instead it was vaguely worded and provided that "[i]ssues have arisen between Bagbag and Alcobi and such parties wish to settle such issues." The Debtor also agreed to refer certain real estate transactions to a realty firm with which Alcobi was associated.

In the Settlement Agreement, the Debtor represented that "although he is filed for bankruptcy, he is allowed to sign this agreement and it is not in conflict with his status." No notice of the Settlement Agreement was filed with the Bankruptcy Court, and no motions were made seeking approval of the Settlement Agreement.

The day after the Settlement Agreement, on February 10, 2009, the Debtor's ex-wife and the mother of his daughter entered into a transfer agreement with Alcobi (the "**Transfer Agreement**"), wherein the ex-wife, as guardian of the minor daughter's interest, purportedly transferred the minor's one-third interest in an entity, 122 Street Slash, LLC ("**Street Slash**"), to

3

Alcobi.[1] The Transfer Agreement referenced the Settlement Agreement and provided that if the payments required under the Settlement Agreement were timely made, the guardian for the benefit of the minor daughter had "the right to re-purchase for the sum of $10 and other good and valuable consideration from Alcobi, the interest in [Slash Street that had been] assigned to Alcobi [under the Transfer Agreement]." The Transfer Agreement also provided that until September10, 2010, the guardian would retain for the benefit of the minor the right to one-third of the cash flow that arose from the ordinary course of business and obligations of Street Slash.

Three years later, the Debtor received a discharge in his bankruptcy case by order dated February 14, 2012. The chapter 7 case was formally closed by an Order dated February 1, 2013.

### Prior State Court Actions between the Debtor and Alcobi

In October 7, 2010 (prior to the discharge order and prior to the closure of the chapter 7 case), the Debtor commenced a lawsuit in New York State court against Alcobi, Street Slash (incorrectly named in the complaint as 122 School Street LLC) and other defendants. In that action the Debtor sought to enforce certain obligations under the Settlement Agreement. The complaint alleged that Alcobi had entered into an agreement, dated February 9, 2009, in which he promised to pay certain commissions and other monies to the Debtor. The complaint sought $720,000 from all of the defendants. The state court judge determined that the Debtor did not have standing to pursue the 2010 action because of the pending bankruptcy case, and by order entered on December 17, 2010, the case was dismissed without prejudice to the right of the

---

[1] The Debtor and Alcobi were among the original members of the Street Slash entity, which according to its May 2007 operating agreement was formed "to acquire, lease, sublease, operate, finance, develop, improve, own and convey [certain real property located in Yonkers, New York]," as well as other assets that might later be acquired by Street Slash. The Street Slash operating agreement was amended on April 1, 2008 to reflect that the Debtor's interest in the Street Slash entity was transferred to his minor daughter. This amendment was signed by the Debtor as the purported assignee custodian for his minor daughter under the Uniform Gifts to Minors Act.

4

chapter 7 trustee to restore it if the trustee determined that the matter should be pursued. It does not appear that the chapter 7 trustee pursued the 2010 action.

On September 12, 2012 (after the discharge order but before the closure of the chapter 7 case), the Debtor commenced another action in a New York State court against several defendants, including Alcobi and Street Slash. The complaint alleged, among other things, breach of contract and breach of fiduciary duties, and sought monetary damages, removal of Alcobi as manager of Street Slash, and an accounting. The Debtor brought the 2012 action in three capacities: individually, purporting to be the minor daughter's guardian, and purporting to have authority to bring it derivatively on behalf of the Street Slash entity. Ultimately the state court granted the defendant's motion to dismiss the complaint, finding that the minor daughter could not maintain the action because she did not have an interest in Street Slash. This determination was based on the fact that because the Debtor had failed to pay the $190,000 pursuant to the terms of the Settlement Agreement, the minor's former interest in Street Slash had not been returned to her under the terms of the Transfer Agreement. The trial court did, however, find that the minor was entitled to the cash flow, plus interest, from Street Slash from February 10, 2009 to September 10, 2010. A judgment, dated June 20, 2017, was entered dismissing the complaint, but awarding the minor one-third of the cash flow for the period described.

**The State Court Judgment and the Motion to Enforce the Discharge Injunction**

On August 22, 2016, Alcobi brought a state court action against the Debtor pursuant to New York CPLR § 3213, which allows the filing of a motion in lieu of complaint "[w]hen an action is based upon an instrument for the payment of money only or upon any judgment." N.Y.C.P.L.R. § 3213. Alcobi asserted that he sought summary judgment on the amounts due

5

under the Settlement Agreement. The Debtor opposed the relief, arguing that the debt had been discharged in the Debtor's bankruptcy case and, in any event, that it was not supported by valid consideration. Alcobi argued that consideration had been provided as the Settlement Agreement recited that it was in payment for an amount that was already owed to Alcobi by the Debtor. Alcobi further argued that the debt was enforceable despite the discharge, because the bankruptcy petition had been filed on July 10, 2008, which was "before the [Settlement] Agreement was entered on February 9, 2009." Alcobi's Reply Affirmation in N.Y. Sup. Ct, Index No. 654572/2016 (Dkt. No. 15 at ¶ 15).

The state court granted judgment in favor of Alcobi. In its February 21, 2017 decision in favor of Alcobi, the state court relied on a 1935 decision that pre-dates the enactment of the current version of the Bankruptcy Code. The state court stated:

> In the September 9th agreement [the Settlement Agreement], Bagbag expressly stated that despite the prior bankruptcy filing, he was agreeing to pay the sum of $190,000. An explicit written assurance to make payment of a debt after a petition for bankruptcy is filed is not discharged (*Stern v. Starr*, 156 Misc. 746 [Cty. Ct. NY Co. 1935]).
>
> . . . .
>
> [U]nder the Bankruptcy Code, the debtor is discharged from all debts that arose prior to the filing of the petition. Since Bagbag entered the September 9, 2009 agreement after the petition was filed, the debt was not discharged upon issuance of the final decree on February 1, 2013.

Decision and Order, *Alcobi v. Bagbag*, Index No. 654572/2016, Dkt. No. 18 at p. 4-5 (N.Y. Sup. Ct. N.Y. Cnty. February 21, 2017). The 1935 decision in *Stern v. Starr*, which was cited by the state court, held that as a matter of New York State law a post-bankruptcy promise to pay a debt was enforceable, even if that debt otherwise was (or would have been) discharged in bankruptcy, so long as the post-bankruptcy promise to pay was clear and unequivocal. *See* 156 Misc. 246, 747-48, 282 N.Y.S. 516 (N.Y. City Ct. 1935).

6

On March 10, 2017, a judgment was entered against the Debtor in favor of Alcobi in the amount of $403,863.08, based on a debt of $190,000 plus interest and costs.[2] (Judgment, Index no. 654572/2016, Dkt No. 26). The Debtor made other requests to reopen the record, which the state court denied. Apparently an appeal is now pending, though it is unclear from the record before this Court whether the Debtor properly perfected the appeal.

In the spring of 2018, the Debtor filed a motion in this Court to reopen his bankruptcy case for the purpose of filing the motion to declare the Settlement Agreement void and to enforce the discharge injunction against Alcobi. The motion to reopen the case was granted, and after further motion papers were filed a hearing on the motion to enforce the discharge injunction was held on October 18, 2018.

### The Applicable Law

The Debtor was granted a discharge in his chapter 7 case. Section 727(b) of the Bankruptcy Code provides that the chapter 7 discharge applies to all debts that arose before the date of the order for relief. 11 U.S.C. § 727. In a voluntary chapter 7 case the date of the "order for relief" is the date of the bankruptcy filing itself. 11 U.S.C. § 301(b). The Debtor therefore was discharged from all pre-bankruptcy debts (including any debts that were based on actions that pre-dated the bankruptcy) unless one of the Bankruptcy Code's exceptions to discharge is applicable.

As noted above, Alcobi initially contended in his filed proof of claim that the debts owed to him were subject to certain statutory exceptions to the chapter 7 discharge. However, Alcobi

---

[2] The issue of attorney fees and expenses had been severed for later determination. On June 22, 2018, a supplemental order was issued directing the clerk to enter judgment in the amount of $13,052.50 for attorney fees and expenses. (Supplemental Order, Index no. 654572/2016, Dkt No. 72.)

7

did not file a timely complaint for that purpose as required by Fed. R. Bankr. P. 4007(a). The alleged exceptions to discharge for the debts owed to Alcobi therefore are not available.

Section 524(a) of the Bankruptcy Code contains certain provisions that automatically apply to discharged debts and that are designed to ensure that the discharge is respected and effective. Section 524(a) states:

> (a) A discharge in a case under this title—
>
> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 . . . whether or not discharge of such debt is waived;
>
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; . . .

11 U.S.C. § 524. Note that by its terms section 524(a) "voids" any judgment based on a discharged obligation, regardless of whether the discharge is waived. This applies to judgments entered "at any time" with respect to a discharged debt, including judgments entered after the discharge has been granted. *See* 4 COLLIER ON BANKRUPTCY ¶ 524.02[1] (16th ed. 2018). Note, too, that the discharge does not merely give rise to an affirmative defense on the part of the discharged debtor. Instead, the discharge acts as an affirmative injunction against any efforts by creditors to enforce or to collect on the discharged obligations. *Id.* ¶ 524.02[2].

The Bankruptcy Code permits a debtor to reaffirm a debt that otherwise would be discharged, but it imposes strict limits on the manner in which a debtor may do so. More particularly, section 524(c) provides:

> (c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if –

8

 (1) such agreement was made before the granting of the discharge under section 727, 1141, 1228, or 1328 of this title;

 (2) the debtor received the disclosures described in subsection (k) at or before the time at which the debtor signed the agreement;[3]

 (3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that--

  (A) such agreement represents a fully informed and voluntary agreement by the debtor;

  (B) such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and

  (C) the attorney fully advised the debtor of the legal effect and consequences of--

   (i) an agreement of the kind specified in this subsection; and

   (ii) any default under such an agreement;

 (4) the debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim;

 (5) the provisions of subsection (d) of this section have been complied with; and

 (6) (A) in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection, the court approves such agreement as--

  (i) not imposing an undue hardship on the debtor or a dependent of the debtor; and

  (ii) in the best interest of the debtor.

 (B) Subparagraph (A) shall not apply to the extent that such debt is a consumer debt secured by real property.

11 U.S.C. § 524(c).

---

[3] Subsection (k) requires extensive disclosures to a debtor who reaffirms a debt.

Section 524(c) of the Bankruptcy Code makes clear that the provisions in section 524(c) are exclusive; they are the "only" means by which an otherwise dischargeable debt may be reaffirmed. *See* 11 U.S.C. § 524(c); *In re Cruz*, 254 B.R. 801, 813 (Bankr. S.D.N.Y. 2000) (noting that a reaffirmation agreement that complies with the § 524(c) and (d) is the only manner in which a liability on a pre-petition debt can survive a discharge); *see also*, *In re Beschloss,* Case No. 15-12139, 2018 WL 2138276, at *3 (Bankr. S.D.N.Y. May 8, 2018). Section 524(c) has superseded and pre-empts any state court law or decision that would enforce post-bankruptcy reaffirmations of dischargeable obligations on other terms, including the 1935 decision in *Stern v. Starr* that the state court cited in this case.

In addition, the limits set forth in section 524(c) apply whenever a post-petition agreement is made "in whole or in part" in consideration of a dischargeable debt. If a dischargeable debt provides any part of the consideration for a post-bankruptcy agreement, and if that agreement does not comply with the requirements of section 524(c), then the agreement is unenforceable, the discharge injunction applies, and any judgment entered in violation of the injunction is void.

### Application of the Law to this Case

The Settlement Agreement admittedly was executed after the Debtor's bankruptcy filing and while the case was pending. It is without dispute that none of the reaffirmation requirements of section 524(c) were met. Accordingly, to the extent that the Settlement Agreement was made "in whole or in part" in consideration of any pre-bankruptcy obligation, the agreement is unenforceable against the Debtor, and the pre-bankruptcy obligation is subject to the discharge injunction.

A federal bankruptcy court has authority to ignore and to declare void a state court judgment that is contrary to the discharge provided by the Bankruptcy Code. Accordingly, to the extent that the state court judgment was entered in violation of the discharge injunction, this Court can and should declare it to be void and of no effect. *Pavelich v. McCormick, Barstow, Sheppard, Wayte & Carruth LLP (In re Pavelich)*, 229 B.R. 777, 781 (9th Cir. 1999); *In re Cruz*, 254 B.R. at 812.

In this case, Alcobi argued to the state court that the Debtor's discharge did not matter, and that the Settlement Agreement could be enforced despite the discharge, based merely on the fact that the agreement was signed after the date of the bankruptcy filing. Alcobi therefore asked the state court to enforce the Settlement Agreement even if it was in consideration of discharged debts and to do so on terms that were at odds with the requirements of section 524(c). The very act of asking the state court to enforce the debt on this theory was a violation of the discharge injunction.

In addition, the only rationale given for the ruling by the state court was that the Debtor "entered the [Settlement Agreement] after the petition was filed." (Decision and Order, *Alcobi v. Bagbag*, Index No. 654572/2016, Dkt No. 18 at p.5). The state court cited to *Stern v. Starr*, 156 Misc. 746, 747-48, 282 N.Y.S. 516, 517-18 (N.Y. Co. 1935), which held that debts that otherwise would be discharged in bankruptcy are nevertheless enforceable if they are reaffirmed in a clear and unequivocal post-bankruptcy agreement. The state court therefore entered judgment based on the theory that the Settlement Agreement is enforceable despite the bankruptcy discharge, just because the Settlement Agreement was executed after the date of the bankruptcy filing and despite the fact that it did not comply with the requirements of section 524(c) of the Bankruptcy Code. A

11

judgment based on that theory is in violation of the plain language of section 524 and must be declared void as a matter of federal law.

Alcobi's counsel argued at oral argument that discharge is an affirmative defense for pleading purposes, and that the Debtor should be left to bear the consequences if he failed to convince the state court that the discharge was applicable and if he fails to succeed in his state court appeals from the judgment. However, the discharge provisions of section 524 do much more than merely give rise to an "affirmative defense." They explicitly give rise to an injunction against any effort to enforce the discharged debt. Alcobi violated that injunction by urging the state court to enforce the Settlement Agreement on grounds that were contrary to the terms of section 524(c).

Furthermore, section 524 says that "any judgment" entered with respect to a discharged obligation is "void." As noted above, this applies to judgments entered "at any time" with respect to a discharged debt, including judgments entered after the discharge has been granted. *See* 4 COLLIER ON BANKRUPTCY ¶ 524.02[1] (16th ed. 2018). The very wording of the statute presumes that a judgment has been entered against a debtor and therefore that the debtor has not prevailed in litigation in another court. It therefore cannot be the case that the Debtor is simply stuck with the outcome of the state court litigation.

The whole point of section 524(a) is to ensure the enforcement and the effectiveness of the discharge as a matter of federal law – regardless of actions taken by creditors, regardless of actions (or inactions) by debtors, and regardless of judgments that may be entered by other courts. For that reason, "the level of participation by the debtor

12

in a state court" is not considered in enforcing the discharge injunction. *In re Cruz*, 254 B.R. at 810.

In his papers in this Court, and at oral argument, Alcobi also relied on a new theory that was different from the one he had argued to the state court. Alcobi argued that the February 2009 Settlement Agreement had actually been executed entirely in consideration of post-bankruptcy events and claims (namely, alleged threats made against Alcobi and members of his family), and that the pre-bankruptcy obligations had nothing to do with it. More particularly, Alcobi asserted in this Court that "Alcobi and the Debtor agreed that in exchange for Alcobi's not seeking civil remedies against the Debtor for the mental anguish and emotional distress caused to Alcobi and his family by the Debtor, the Debtor would agree to pay Alcobi $190,000." Thereafter, an attorney was engaged to draft the parties' agreement; however, according to Alcobi, "[g]iven the extremely sensitive nature of the issues," neither he nor the Debtor disclosed "the nature of the settlement" to the attorney drafting the agreement, and that is why the Settlement Agreement "made only vague reference to a dispute between the Debtor and Alcobi." *See*, Alcobi's Opposition to Debtor's Motion, [Dkt No. 163-1 at ¶15]).

This contention first appears in Alcobi's September 6, 2018 responsive papers in this Court. From the state court documents made available to this Court, it does not appear that the state court was even made aware of these allegations. In an effort to ensure proper deference to the state court we have scoured the available state court filings, and we have found absolutely no mention of this theory at any time. The only argument that ever was made to the state court was that the Settlement Agreement was enforceable, despite the Debtor's discharge, because the Settlement Agreement had been

13

signed voluntarily and because the agreement was clear and unequivocal. The very fact that the state court relied on the decision in the *Stern v. Starr* decision belies any contention that the state court allegedly was finding that the Settlement Agreement was purely in consideration of post-bankruptcy claims. If that had been the case, then *Stern v. Starr* would not even have been relevant.

The Court recognizes that the state court has the power to make a ruling as to whether the conduct at issue was pre-petition or post-petition. If the state court had actually made such a decision, I would gladly have accorded deference to it. But proper "deference" to a state court must be based on what the state court has actually done. It is my duty to enforce the discharge and the injunction set forth in section 524(c). In carrying out that duty I cannot ignore the actual arguments that were made to the state court, which were made in violation of the discharge injunction as noted above. Nor can I ignore the actual ground for decision that was announced by the state court, which held that the obligations in the Settlement Agreement could be enforced, notwithstanding the discharge, just because the agreement was clear and had post-dated the bankruptcy filing and without regard to whether the agreement complied with section 524(c). The discharge and the injunction would mean little if I were required to blind myself to what actually happened, and to indulge in the pure fiction that the state court's decision was somehow based on newly conjured-up theories that were never presented to the state court and on which the state court did not rule.

Finally, when the Court made reference to the requirements of section 524(c) at oral argument, Alcobi's counsel responded that the state court had rejected the Debtor's separate contention that there was a lack of consideration for the Settlement Agreement.

14

This argument misses the point. I am not revisiting the state court's ruling as to whether there was any consideration for the agreement. However, Section 524(c) provides that if that consideration was "in whole or part" based on pre-bankruptcy obligations, the agreement may not be enforced, and the discharge injunction applies. Alcobi argued that the agreement was enforceable even if it related to discharged obligations, and the state court so held. Those actions violated the discharge.

      The Rooker-Feldman doctrine requires deference to state court decisions, but it is well-settled that the doctrine does not apply where actions have been taken in violation of the discharge injunction and where a judgment is made void by the terms of federal bankruptcy law. *Pavelich v. McCormick, Barstow, Sheppard, Wayte & Carruth LLP (In re Pavelich)*, 229 B.R. 777, 781 (9th Cir. 1999), *In re Dabrowski*, 257 B.R. 394, 406 (Bankr. S.D.N.Y. 2001), *In re Cruz*, 254 B.R. at 812. The judgment entered by the state court was entered in response to contentions (and on the theory) that the Settlement Agreement was enforceable, despite the discharge of debts, just because the Settlement Agreement was entered after the date of the bankruptcy filing, and in that respect the judgment is void.

      The Debtor has also asked me to declare that the Settlement Agreement itself is void and unenforceable. The agreement plainly is void and unenforceable if it was made in whole or even in part in consideration of pre-bankruptcy events and obligations. However, Alcobi may pursue, in the state court, his alternative theory that the Settlement Agreement was made solely in consideration of post-bankruptcy conduct, if he believes there are facts to support that contention. The state court has jurisdiction to decide whether the agreement was entirely in consideration of post-bankruptcy events, and I will

15

not interfere with its jurisdiction to do so.  To be clear, however: under the plain terms of section 524(c) the Settlement Agreement would not be enforceable against the Debtor if it was made "in whole or in part" in consideration of pre-bankruptcy obligations.  Any obligation that is based on agreements that were made or on events that took place prior to the Debtor's July 2008 bankruptcy filing is a discharged obligation.  The discharge injunction therefore prevents enforcement of the agreement unless Alcobi proves that the Settlement Agreement was entered solely – not just mostly, but entirely – on the basis of events that occurred after the Debtor's bankruptcy filing in July 2008 and in consideration of claims that arose entirely from those post-bankruptcy events and not from earlier events.

The Debtor has also asked me to undo certain actions taken by other parties in reliance on the Settlement Agreement, and certain transfers of property made by other parties.  I decline to do so.  The discharge and injunction protect the Debtor himself.  The validity of actions taken by other parties, and whatever defenses or arguments they may have under state law, are for the state courts to decide.

## Conclusion

For the foregoing reasons, the Debtor's motion is granted to the extent of declaring that the state court judgment, dated March 10, 2017, and any modified judgment that incorporates an award of attorneys' fees and expenses, is void and unenforceable.  The Settlement Agreement is not enforceable if it was made in whole or in part in consideration of events and obligations that occurred prior to the Debtor's bankruptcy filing in July 2008.  However, Alcobi may pursue, in the state court, his contentions that pre-bankruptcy events and obligations had nothing to do with the

16

Settlement Agreement, and that the Settlement Agreement was based solely on events that post-dated the Debtor's bankruptcy filing in July 2008 and in consideration of claims that arose entirely from those post-bankruptcy events, and not from earlier events. The Debtor's request that the Court undo other actions taken by other parties, or obligations incurred by other parties, is denied, without prejudice to further proceedings in the state court to determine the effect (if any) of the rulings set forth herein on those other parties. A separate Order will be entered to reflect these rulings.

Dated: New York, New York
      November 15, 2018

                              **s/Michael E. Wiles**
                              UNITED STATES BANKRUPTCY JUDGE