SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

BOAZ BAGBAG,

                           Plaintiff,

           -against-

WAYNE MICHAEL GREENWALD, ESQ.,
HOWARD ABRAMS SCHULDER, ESQ.
and SUMMA CAPITAL CORP.,

                    Defendants.

Index No. 161205/2020

**AFFIRMATION OF CHRISTOPHER A. GORMAN, ESQ. IN SUPPORT OF CROSS-MOTION FOR LEAVE TO AMEND AND IN OPPOSITION TO THE SCHULDER DEFENDANTS' <u>MOTION TO DISMISS</u>**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

CHRISTOPHER A. GORMAN, an attorney admitted to practice law in the State of New York, affirms the following to be true under the penalty of perjury pursuant to CPLR 2106:

1.     I am a partner at the law firm of Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP, attorneys for plaintiff, Boaz Bagbag ("Plaintiff" or "Bagbag'), in the above-captioned action. As such, I am familiar with the facts and circumstances set forth herein based upon a review of the file maintained by this office.

2.     I submit this affirmation (i) in support of Plaintiff's cross-motion for an Order, pursuant to CPLR 3025(b), granting Plaintiff leave to further amend the Amended Complaint (NYSCEF Doc. No. 27) as set forth in the annexed proposed Second Amended Complaint (NYSCEF Doc. No. 80; the "SAC") with respect to the first and second causes of action contained in the SAC; and (ii) in opposition to the

motion to dismiss pursuant to CPLR 3211(a)(5) and CPLR 3211(a)(7) filed by defendants, Howard Abrams Schulder, Esq. ("Schulder") and Summa Capital Corp. ("Summa," and when referred to collectively with Schulder, the "Schulder Defendants" or the "Summa Defendants").

## PRELIMINARY STATEMENT

3.      Counsel and the Court should be able to agree on at least one thing – lying to a court, whether as a party to a litigation or a duly licensed attorney, is a very serious offense the violation of which cannot be tolerated if the courts are to continue to efficiently administer justice.  The Schulder Defendants, however, spend much of their motion to dismiss trying to convince the Court that such misconduct – *i.e.*, lying to a court – is not so outrageous as to be able to expose the liars to subsequent civil liability where a party is damaged directly as a result of such lies. The case law cited by Plaintiff below, of course, provides otherwise and respectfully requires that the Summa Defendants' motion be denied in its entirety.

4.      Indeed, the Schulder Defendants' motion to dismiss is premised upon bold pronouncements as to what the law purportedly is, but is otherwise very light on actual citation to authority to support such bold pronouncements.  That is because, as detailed below, whether in the Amended Complaint or the SAC, Plaintiff has more than adequately pled at this stage a claim for intentional infliction of emotional distress against the Summa Defendants as a result of a series of lies they propagated to the United States Bankruptcy Court.

2

5.     Before addressing the merits (or lack thereof) of the Summa Defendants'
motion to dismiss, Plaintiff first addresses the merits of his cross-motion seeking
leave to further amend the Amended Complaint.  Plaintiff was forced to file the cross-
motion only because of the Summa Defendants' refusal to consent to relief to which
Plaintiff is clearly entitled at this very preliminary stage of the proceedings.

6.     As set forth below, Plaintiff seeks leave to further amend the Amended
Complaint with the SAC (NYSCEF Doc. No. 80).  A true and correct copy of a redline
of the SAC (in comparison to the Amended Complaint) is annexed hereto as part of
Exhibit "A."   Plaintiff initiated this action with the filing of a Summons and
Complaint (NYSCEF Doc. No. 1; the "Complaint") less than six months ago asserting
a cause of action under the Judiciary Law against, among others, Schulder. The
parties have been engaged in motion practice – but only motion practice – since.  The
pleadings in this action are not even closed – none of the defendants have answered.
There has been no discovery to date in this action.  Not a single document demand or
interrogatory has been served.  Not a single deposition has been conducted.

7.     CPLR 3025(b) provides that leave to amend "shall be freely given," and
absent surprise or prejudice, an application to amend a complaint should virtually
never be denied. Here, there is no surprise or prejudice to the Summa Defendants
because, among other reasons, the same nucleus of operative facts that underlay the
claims asserted in the Complaint and the Amended Complaint form the basis for the
allegations contained in the SAC.[1]  Consequently, further amending the Amended

---

[1] Plaintiff only seeks leave to amend with respect to the first and second causes of action
contained in the SAC.  This is so because, on or about May 21, 2021, the United States

Complaint, as proposed in the SAC, causes no hardship on the Summa Defendants and Plaintiff therefore respectfully requests that this Court grant leave to amend to the extent requested herein.

8. Moreover, as set forth in greater detail below, the Schulder Defendants' motion to dismiss should be denied in its entirety. The Schulder Defendants' motion to dismiss is founded upon two theories.

9. First, the Schulder Defendants contend that the intentional infliction of emotional distress claim contained in the amended pleadings is purportedly time-barred under the one-year statute of limitations governing such a claim. But the Schulder Defendants, in moving to dismiss on this ground, ignore the legal concept of the "relation back" of an amended pleading to the original pleading as expressly provided for in the CPLR. *See, e.g.,* CPLR 203(f). Here, the Complaint was filed on December 23, 2020 (*see* NYSCEF No. 1). As detailed below, the factual allegations underlaying the intentional infliction of emotional distress claim contained in the Amended Complaint and the SAC – both of which deal with Summa's fraudulent and

---

Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") issued a "Scheduling Order and Temporary Restraining Order" (hereinafter, the "Temporary Stay Order") in a related bankruptcy proceeding (Case No. 08-12667; Adv. Proc. No. 20-1185) stating that Plaintiff and his attorneys "are temporarily restrained from taking any actions to pursue or to seek relief with respect to the Third, Fourth and Fifth Causes of Action asserted in the" SAC. The Bankruptcy Court went on to say that "[t]his restraint shall prohibit the pursuit of those claims against all of the parties against whom Bagbag has proposed to assert such claims." For that reason, the request of Plaintiff to further amend the Amended Complaint as proposed in the SAC for present purposes should not be deemed to include a request to amend any of the causes of action contained in the Amended Complaint other than the first and second causes of action, although Plaintiff expressly reserves the right to pursue the third through fifth causes of action contained in the SAC in the event that the Bankruptcy Court ultimately does not grant injunctive relief and/or if any future event (in the Bankruptcy Court or otherwise) permits Bagbag to pursue those claims.

4

false fee application submitted to the Bankruptcy Court – were contained in the original Complaint. Thus, the allegations contained in the SAC plainly relate back to the filing of the Complaint in December 2020. Because Plaintiff could not have pled all of the elements of his claim for intentional infliction of emotional distress until March 17, 2020, when the Bankruptcy Court issued its decision on Summa's fraudulent and false fee application, the claim is timely asserted. Under any theory that the Summa Defendants try to spin to support the statute of limitations defense, therefore, the intentional infliction of emotional distress claim is timely.

10.     Second, the Schulder Defendants argue, albeit in conclusory fashion with virtually no citation to authority to support their contentions, that Plaintiff has allegedly failed to plead a claim for intentional infliction of emotional distress. But the Schulder Defendants' arguments are premised on (i) them ignoring the factual allegations contained in the Amended Complaint and the SAC; (ii) them disregarding the applicable legal principles as articulated by the Appellate Division, First Department and other appellate courts of this state; or (iii) them requiring this Court to determine fact-specific issues on a motion to dismiss, which as this Court is well aware is not its function at this stage of the proceedings. As detailed below, Plaintiff has sufficiently pled based on factual allegations contained in the Amended Complaint and the SAC all of the required elements of an intentional infliction of emotional distress claim. As such, the Summa Defendants' motion to dismiss should, respectfully, be denied in its entirety.

5

## FACTUAL AND PROCEDURAL BACKGROUND

11.　For a full and complete recitation of the facts underlying this matter, the Court is respectfully referred to the Amended Complaint (annexed hereto as Exhibit "B") (NYSCEF Doc. No. 27) and the proposed SAC (annexed hereto as Exhibit "A", along with a redline compared against the Amended Complaint also annexed as part of Exhibit "A"). The facts most relevant to the cross-motion or Plaintiff's opposition are set forth below.

### _The Complaint and the First Motion to Dismiss_

12.　On or about December 23, 2020, Plaintiff commenced this action against the defendants, Schulder and Wayne Michael Greenwald, Esq. ("Greenwald"), alleging violations of Judiciary Law § 487 by filing the Complaint (NYSCEF Doc. No. 1).

13.　In the Complaint, Plaintiff alleged that he was the petitioner in a bankruptcy proceeding pending in the Bankruptcy Court under the Case No. 08-12667, and was the plaintiff in an adversary proceeding in the Bankruptcy Court captioned as _Boaz Bagbag v. Summa Capital Corp._, Adv. Proc. No. 19-01022 (collectively, the "Bankruptcy Action"). _See_ Complaint at ¶ 1.

14.　Plaintiff alleged in the Complaint that Greenwald "is an attorney admitted to practice" and that "Mr. Greenwald is the principal attorney at Wayne Greenwald, P.C." _Id._ at ¶ 2.

15.     Plaintiff further alleged in the Complaint that Schulder "is an attorney admitted to practice law" and that "Mr. Schulder's attorney registration names Summa Capital Corp. as his business." *Id.* at ¶ 3.

16.     Plaintiff alleged in the Complaint that "Greenwald represented Schulder's business, Summa Capital," in the Bankruptcy Action. *Id.* at ¶ 4.

17.     According to Plaintiff, "[o]n November 27, 2019, Wayne Greenwald filed an application for attorney's fees and costs purportedly totaling $90,403.82." *Id.* at ¶ 5.

18.     Plaintiff went on to allege in the Complaint:  "Greenwald's invoice was remarkably over-sized, including demands for payment for clearly false and inflated time entries.  Of course, it was impossible to comment on every line item.  But, given that the following examples are so demonstrably inflated, we can infer that the remaining entries are similarly exaggerated." *Id.* at ¶ 6.

19.     Plaintiff thereafter laid out, by way of example, a series of "falsified and inflated charges," which included specific references to time entries that were obviously inflated in relation to the amount of work allegedly performed. *Id.* at ¶ 7.

20.     Plaintiff also highlighted certain "inflated and falsified" expense requests made by Greenwald and generally described misconduct that was deemed "emblematic of the overall inflated and falsified nature of the fee demand." *Id.* at ¶ 8.

21.     Plaintiff alleged that the Bankruptcy Court issued orders describing the time entries as excessive and further contended that the "Bankruptcy Court rejected

7

all of the legal theories proffered by Defendants to support their application for $90,403.82 in attorney's fees and costs." *Id.* at ¶¶ 9-10.

22.     As part of alleging a Judiciary Law § 487 claim against both Greenwald and Schulder in the Complaint, Plaintiff made the following allegations, among others, against both defendants (including Schulder):

- The time entries included in the application "seeking attorney's fees and costs" that were submitted to the Bankruptcy Court "contained numerous time entries which were exaggerated and deceitful" (*see id.* at ¶ 12);

- "The exaggerated time entries were filed as an effort to extract funds from Plaintiff, either through settlement negotiations or a court order, for attorney's fees that Defendant Greenwald did not earn or Defendant Schulder incur" (*id.*);

- The defendants prosecuted a claim for an award of attorneys' fees that "they knew included exaggerated and outright false time entries" (*id.* at ¶ 13);

- The defendants' "deceitful collusion caused Plaintiff damages in the form of attorney's fees which he incurred to defend an application for attorney's fees that included exaggerated and false time charges" (*id.* at ¶ 14).

23.     Both Schulder and Greenwald moved to dismiss the Complaint. *See* NYSCEF Doc. Nos. 4-24. Schulder's motion to dismiss focused principally on the fact that "the Complaint does not allege that Mr. Schulder acted in the Adversary Proceeding in his capacity as an attorney" and, thus, the Complaint purportedly failed to state a claim against Schulder under Judiciary Law § 487. *See* NYSCEF Doc. No. 11.

### *The Amended Complaint and the Second Motion to Dismiss*

24.     On or about April 15, 2021, Plaintiff amended the Complaint with the filing of the Amended Complaint, as well as a Supplemental Summons to add defendant, Summa Capital, as a party to the case. *See* NYSCEF Doc. Nos. 26-27.

8

25.     In the Amended Complaint, Plaintiff alleged that "Greenwald represented Summa Capital as counsel in the Bankruptcy Action" and that "Greenwald took his direction for the representation of Summa Capital in the Bankruptcy Action directly from Schulder, as the principal of the Company." *See* Amended Complaint at ¶¶ 10-11.

26.     In the Amended Complaint, Plaintiff accused the defendants (Greenwald, Schulder and Summa) of engaging in "intentional misconduct" by making "false misrepresentations" to the Bankruptcy Court in connection with the Bankruptcy Action. *Id.* at ¶ 12.

27.     Plaintiff alleged that "Defendants knowingly lied to the Bankruptcy Court in making up exaggerations and false time entries in an effort to collect monies from Plaintiff purportedly for fees and costs incurred in the Bankruptcy Action." *Id.* at ¶ 13.

28.     Plaintiff further alleged that "Defendants did so solely for the purpose of harassing Plaintiff in order to cause Plaintiff to spend additional monies and incur exorbitant litigation costs in an effort to defend against Defendants' false and fraudulent applications." *Id.* at ¶ 14.

29.     Plaintiff went on to allege in the Amended Complaint: "The Bankruptcy Court saw right through Defendants' misrepresentations, knocking down Defendants' fee applications by more than eighty-eight percent (88%) in relation to the fees that Summa was seeking, all of which reductions were achieved by Plaintiff

9

only through the expenditure of significant sums of money to defendant against Defendants' fraudulent claims." *Id.* at ¶ 15.

30.     Plaintiff alleged that it was "[b]ecause of Defendants' misconduct" that he "was left with no recourse other than to commence this lawsuit against Defendants so that he can recover monies due and owing to him caused by Defendants' egregious behavior." *Id.* at ¶ 16.

31.     Plaintiff alleged in the Amended Complaint that Greenwald "in collusion with his client, Summa Capital," filed a fee application in the Bankruptcy Action that "was exaggerated in that it, among other things, included demands for payment for clearly false and inflated time entries." *Id.* at ¶¶ 17-18.

32.     Plaintiff alleged with respect to Greenwald that the "false and otherwise fraudulent fee application violated a number of ethical rules governing attorney conduct," and that "Schulder, acting on behalf of Summa Capital, directed or otherwise authorized Greenwald to include these false time entries in Summa Capital's application for attorneys' fees and costs with the intent to deceive the Bankruptcy Court." *Id.* at ¶¶ 19-20.

33.     Plaintiff further alleged "[u]pon information and belief" that "Schulder, acting on behalf of Summa Capital, directed Greenwald to include these false time entries in Summa Capital's application for attorneys' fees and costs in order to harass Plaintiff and to cause Plaintiff to have to expend substantial resources defending against a fraudulent and inflated fee application." *Id.* at ¶ 21.

10

34.     In the Amended Complaint, Plaintiff provided examples of time entries that included "misrepresentations and inflated charges" which were identical in all material respects to the list that was included in the original Complaint. *Compare* Complaint at ¶ 7, *with* Amended Complaint at ¶ 23.

35.     Plaintiff also highlighted certain "inflated and falsified" expense requests and generally described misconduct that was deemed "emblematic of the overall inflated and falsified nature of the fee demand." *See* Amended Complaint at ¶¶ 24-25.

36.     Plaintiff "incurred substantial attorneys' fees and costs having to respond to the fee application in order to point out to the Bankruptcy Court, among other things, the falsehoods and misrepresentations contained in the fee application. For instance, in responding to the fee application, Plaintiff demonstrated that the Company's application improperly sought fees that were false and unreasonable, including time entries for work that was unrelated to the Bankruptcy Action even though Greenwald and the Schulder Defendants were trying to 'pass it off' as related to the Bankruptcy Action." *Id.* at ¶¶ 27-28.

37.     Plaintiff further alleged in the Amended Complaint that the Bankruptcy Court issued orders describing the time entries as excessive and further contended that the "Bankruptcy Court rejected Summa Capital's application for $90,403.82 in attorney's fees and costs and only awarded to Summa Capital a small fraction of the amounts sought." *Id.* at ¶¶ 29-32.

38.     The first cause of action in the Amended Complaint was asserted against Greenwald alone pursuant to Judiciary Law § 487 in which Plaintiff alleged, among other things, that the fee application was "fraudulent," "based, in part, on outright lies", and knowingly contained "numerous falsified time entries." *Id.* at ¶¶ 33-43.[2]

39.     The second cause of action in the Amended Complaint was asserted against the Schulder Defendants sounding in intentional infliction of emotional distress. *Id.* at ¶¶ 44-58.

40.     Plaintiff alleged that Schulder, as a "licensed attorney in the State of New York" who is "bound by the rules in the State of New York governing attorney conduct," engaged in misconduct by "violating the rules governing attorney conduct by authorizing the submission of a false application to the Bankruptcy Court to try to obtain additional monies from Plaintiff to which the Company and Schulder were not entitled," and that such misconduct "constitutes extreme and outrageous behavior." *Id.* at ¶¶ 45-47.

41.     Plaintiff further alleged in the Amended Complaint that "such conduct by Schulder was so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and is to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* at ¶ 48.

---

[2] Greenwald has separately filed a CPRL 3211 motion to dismiss the Amended Complaint. *See* NYSCEF Doc. Nos. 19 through 24. That motion and Plaintiff's opposition thereto will be briefed separately to the Court.

42.     Plaintiff went on to allege that "Summa Capital's conduct of, among other things, authorizing the submission of a false application to the Bankruptcy Court to try to obtain additional monies from Plaintiff to which Summa Capital was not entitled constitutes extreme and outrageous behavior." *Id.* at ¶ 49.

43.     Plaintiff further alleged that "such conduct by Summa Capital was so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and is to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* at ¶ 50.

44.     As Plaintiff explained, "[t]he Schulder Defendants filed the false application with the Bankruptcy Court as part of a deliberate and malicious pattern of harassment of Plaintiff and as part of a campaign intended to intimidate Plaintiff." *Id.* at ¶ 51.

45.     Plaintiff went on to allege that the Schulder Defendants "filed the false application with the Bankruptcy Court and engaged in other misconduct with the intent to deceive and harass the Plaintiff and the Bankruptcy Court and to cause the Plaintiff to spend additional time and money in opposing the application made based upon false pretenses." *Id.* at ¶ 52.

46.     Plaintiff further alleged in the Amended Complaint that "[a]s a result of the Schulder Defendants' false and exaggerated application containing false attorney time entries and costs, Plaintiff was caused to expend additional unnecessary funds to oppose the application, which has caused Plaintiff severe emotional distress, including, but not limited to, anxiety." *Id.* at ¶ 53.

13

47.     Plaintiff also alleged that Schulder, "as an officer and the principal of Summa Capital," is "personally liable for the[] acts that bring about injury to a third party." *Id.* at ¶¶ 54-55.

48.     Plaintiff further alleged that because "Schulder personally participated in the wrongful and fraudulent conduct detailed herein by, among other things, approving and otherwise authorizing the submission by Summa Capital of the falsified application for attorneys' fees and costs in the Bankruptcy Court," he "is liable in his individual capacity for the tort of intentional infliction of emotional distress." *Id.* at ¶¶ 56-57.

## *The Motion to Dismiss and the SAC*

49.     Thereafter, the Schulder Defendants moved to dismiss the Amended Complaint pursuant to CPLR 3211(a)(5) and CPLR 3211(a)(7). *See* NYSCEF Doc. Nos. 32-35.

50.     On or about May 14, 2021, Plaintiff filed the SAC. *See* NYSCEF Doc. No. 80.

51.     While the SAC asserted additional causes of action which are currently stayed pursuant to the Bankruptcy Court's Temporary Stay Order (*see* n.1 *supra*), Plaintiff also asserted certain additional factual allegations to amplify the allegations of the intentional infliction of emotional distress claim made against the Schulder Defendants in the Amended Complaint.

52.     For instance, Plaintiff alleges that Summa has engaged in conduct which was "intended to harass Plaintiff" including by sending "post-judgment party

and third-party discovery demands . . . to various individuals and organizations, including Jewish charities and other Jewish organizations." *See* SAC at ¶ 43.

53.     Plaintiff further alleges in the SAC that Summa's misconduct "serve[s] no legitimate purpose" other than "to harm Plaintiff's reputation in the Jewish business community and otherwise." *Id.* at ¶ 44.

54.     These allegations were incorporated by reference into the allegations against the Schulder Defendants for intentional infliction of emotional distress. *See id.* at ¶ 56.[3]

55.     On May 17, 2021, the Summa Defendants filed a "Notice of Rejection" with respect to the SAC, thereby necessitating this cross-motion to amend. *See* NYSCEF Doc. No. 82.

## THE GOVERNING LEGAL STANDARD

### *Leave to Amend a Pleading*

56.     Under CPLR 3025, a party may amend a pleading "at any time by leave of court." *See* CPLR 3025(b). "A request to amend is determined in accordance with the general considerations applicable to such [a] motion, including the statute's direction that leave 'shall be freely given upon such terms as may be just.'" *See Kimso Apts., LLC v. Gandhi*, 24 N.Y.3d 403, 411 (2014) (citing CPLR 3025(b)). This applies "even if the amendment substantially alters the theory of recovery." *See id.*

---

[3] For the sake of clarity, and to ensure that no claim is made by the Summa Defendants that Plaintiff is violating the Temporary Stay Order of the Bankruptcy Court, these amplified allegations contained in the SAC are only being referenced in order to bolster the intentional infliction of emotional distress claim against the Summa Defendants, and not to prosecute in any way in this Court any of the other causes of action contained in the SAC for the purposes of these opposition papers.

57.     Thus, "[i]n the absence of prejudice or surprise resulting directly from the delay in seeking leave, applications to amend or supplement a pleading 'are to be freely granted unless the proposed amendment is palpably insufficient or patently devoid of merit.'" *See U.S. Bank N.A. v. Lent*, No. 2018-04977, 2021 WL 1653334, at *1 (2d Dept. Apr. 28, 2021).

58.     The party opposing the amendment bears the burden of establishing prejudice. *See Kimso Apartments*, 24 N.Y.3d at 411.

### *CPLR 3211 Motion to Dismiss Standard*

59.     In assessing a motion to dismiss under CPLR 3211(a)(7), the court must "accept the facts alleged as true . . . and determine simply whether the facts alleged fit within any cognizable legal theory." *Morone v. Morone*, 50 N.Y.2d 481, 484 (1980). In ruling on a motion to dismiss, the court "is . . . to determine if, assuming the truth of the facts alleged, the complaint states the elements of a legally cognizable cause of action." *P.T. Bank Central Asia v. ABN Amro Bank N.V.*, 301 A.D.2d 373, 375-76, 754 N.Y.S.2d 245 (1st Dep't 2003). Thus, "[i]f the plaintiff can succeed upon any reasonable view of the allegations, the complaint may not be dismissed." *See Marchionni v. Drexler*, 22 A.D.3d 814, 814, 803 N.Y.S.2d 196 (2d Dep't 2005) (holding that plaintiff sufficiently pleaded a cause of action to recover damages for intentional infliction of emotional distress). "Whether a plaintiff can ultimately establish its allegations should not be considered in determining a motion to dismiss." *Charles Schwab Corporation v. Goldman Sachs Group, Inc.*, 186 A.D.3d 431, 129 N.Y.S.3d 54 (2d Dep't 2020).

16

60.     "On a motion to dismiss a complaint pursuant to CPLR 3211(a)(5) on statute of limitations grounds, the moving defendant must establish, prima facie, that the time in which to commence the action has expired." *Wells Fargo Bank, National Association v. Islam*, 193 A.D.3d 1016, 142 N.Y.S.3d 819 (2d Dep't 2021).  "If the defendant satisfies this burden, the burden shifts to the plaintiff to raise a question of fact as to whether the statute of limitations was tolled or otherwise inapplicable, or whether the plaintiff actually commenced the action within the applicable limitations period." *Id.*

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

61.     Applying these standards here, Plaintiff's cross-motion to amend should be granted and the Schulder Defendants' motion to dismiss should be denied.

## LEGAL ARGUMENT

### POINT I

### THIS COURT SHOULD GRANT PLAINTIFF'S CROSS-MOTION FOR LEAVE TO FURTHER AMEND THE AMENDED COMPLAINT

62.     This Court, respectfully, should permit Plaintiff to file the proposed SAC (Exhibit "A") as it asserts a viable claim against the Schulder Defendants in the second cause of action for intentional infliction of emotional distress. As detailed below, this second cause of action is laid out in painstaking detail in the proposed SAC and states a claim upon which this Court may grant relief.

63.     Indeed, because the second cause of action for intentional infliction of emotional distress asserted by Plaintiff against the Schulder Defendants is not palpably insufficient or patently devoid of merit, the SAC should be deemed filed by

17

this Court. *See Lucido v. Mancuso*, 49 A.D.3d 220, 232, 851 N.Y.S.2d 238 (2d Dep't 2008) (granting plaintiff's motion for leave to amend the complaint as the cause of action was neither palpably insufficient nor patently devoid of merit); *MBIA Ins. Corp. v. Greystone & Co., Inc.*, 74 A.D.3d 499, 901 N.Y.S.2d 522 (1st Dep't 2010) ("On a motion for leave to amend, the plaintiff need not establish the merit of its proposed new allegations").

64. Further supporting the proposed amendment is the fact that discovery has not commenced and none of the defendants have interposed answers. The defendants have not been hindered in the preparation of their cases nor prevented from taking any measure to support their positions in this case. Further, nothing in the proposed SAC is a surprise to the defendants, as most of the allegations relate to serious misconduct engaged in by the defendants with respect to the fee application in the Bankruptcy Court, which was the subject of both the Complaint (*see* ¶¶ 5-14) and the Amended Complaint (*see* ¶¶ 17-32). The essential wrongdoing alleged by Plaintiff in the SAC also has not changed since the time of the filing of the original Complaint – namely, the use of the judicial process for an improper purpose to harass Plaintiff, harm his reputation, and cause him financial losses and overall emotional distress. *See* Complaint at ¶¶ 1-14; Amended Complaint at ¶¶ 33-58. As a result, granting Plaintiff leave to amend the Amended Complaint with the filing of the proposed SAC will not cause the defendants any prejudice.

18

## POINT II

### THE SCHULDER DEFENDANTS' MOTION TO DISMISS
### SHOULD BE DENIED IN ITS ENTIRETY

**A.** **In the Event the Court Grants Plaintiff Leave to File the Proposed SAC, the Schulder Defendants' Motion is Rendered Moot**

65.     Upon this Court permitting the amendment of the attacked pleading (in this instance, the Amended Complaint), the amended pleading (in this instance, the SAC) replaces and supersedes the initial pleading. *See St. Lawrence Explosives Corp. v. Law Bros. Contr. Corp.*, 170 A.D.2d 957, 957, 566 N.Y.S.2d 127 (1st Dep't 1991) ("When an amended complaint has been served, it supersedes the original complaint and becomes the only complaint in the case. Thus, defendants' original answer has no effect and a new responsive pleading must be substituted for the original answer."); *see also D'Amico v. Correctional Medical Care, Inc.*, 120 A.D.3d 956, 991 N.Y.S.2d 687 (4th Dep't 2014) ("the amended complaint superseded the original complaint and became the only complaint in the case"). Thus, upon service of an amended complaint, a motion relating to the original complaint, such as the Schulder Defendants' motion to dismiss here, is rendered "moot." *See Aikens Const. of Rome, Inc. v. Simons,* 284 A.D.2d 946, 246, 727 N.Y.S.2d 213 (4th Dept. 2001) (holding that service of an amended complaint rendered "moot" a motion to reargue a motion to dismiss the original complaint); *Covert Ave. Apartments, Inc. v. Town of Babylon*, 134 A.D.2d 230, 230, 520 N.Y.S.2d 575 (2d Dep't 1987) ("As to the defendant Town of Babylon's motion to dismiss the complaint as against it for failure to state a cause of action, we hold that the issue is moot since the plaintiff has been granted leave to

serve an amended complaint."); *Samide v. Roman Catholic Diocese of Brooklyn*, 194 Misc.2d 561, 563, 754 N.Y.S.2d 164 (Sup. Ct. Queens Cty. 2003) ("Thus, the motions to dismiss and strike portions of the original complaint are rendered moot by the service of the amended complaint.").

66. In this case, therefore, the facts and allegations set forth in the proposed SAC which impact upon the second cause of action asserted against the Schulder Defendants for intentional infliction of emotional distress render the Schulder Defendants' arguments seeking the dismissal of the Amended Complaint moot. Thus, if this Court grants Plaintiff leave to further amend the Amended Complaint as requested in the cross-motion, the Schulder Defendants' motion should be denied in its entirety for this reason alone.

## B. The Second Cause of Action Against the Schulder Defendants is Not Time-Barred

67. As an initial matter, the Schulder Defendants argue that the "Amended Complaint affirmatively alleges that the application for fees and costs, the filing of which allegedly caused plaintiff to suffer 'emotional distress,' was filed with the Bankruptcy Court on November 27, 2019. . . . The Amended Complaint was not filed until April 15, 2021; more than one year later." *See* Memorandum of Law in Support of Motion to Dismiss Amended Complaint, filed on April 27, 2021 (NYSCEF Doc. No. 35; "SD Mem."), at pp. 2-3.

68. The Schulder Defendants, however, offer no basis in their motion – legal or otherwise – as to why the statute of limitations should start to run on the date that

the subject motion was filed in the Bankruptcy Court, November 27, 2019. That is because, respectfully, it should not begin to run as of that date.

69.     But before addressing that issue, it is important to note that the operative date for statute of limitations purposes is not the date of the filing of the Amended Complaint (April 15, 2021), as the Schulder Defendants argue, but rather it is the date of the filing of the original Complaint (December 23, 2020). That is because the claims asserted in the Amended Complaint relate back to the original Complaint under well-settled legal principles.

70.     The relation-back doctrine provides that "[a] claim asserted in an amended pleading is deemed to have been interposed at the time the claims in the original pleading were interposed, unless the original pleading does not give notice of the transaction or occurrences . . . to be proved pursuant to the amended pleading." *See* CPLR 203(f); *see also Giambrone v. Kings Harbor Multicare Ctr.*, 104 A.D.3d 546, 548, 961 N.Y.S.2d 157 (1st Dep't 2013) (making clear that the "salient inquiry" in deciding whether an otherwise untimely claim in an amended pleading relates back to a timely commenced action "is not whether defendant had notice of the claim, but whether, as the statute provides, the original pleading gives 'notice of the transactions [or] occurrences . . . to be proved pursuant to the amended pleading'").

71.     Here, Plaintiff's intentional infliction of emotional distress claim asserted in the Amended Complaint is based upon the same transactions and occurrences as the Judiciary Law § 487 claim asserted in the original Complaint – namely, among other things, the filing of the false and fraudulent fee application

21

submitted to the Bankruptcy Court by Summa. *Compare* Complaint at ¶¶ 1-14, *with* Amended Complaint at ¶¶ 44-58. Indeed, both the original Complaint and the Amended Complaint set forth the same list (for illustrative purposes) of certain of the false and fraudulent entries contained in the fee application submitted to the Bankruptcy Court. *Compare* Complaint at ¶¶ 7-8, *with* Amended Complaint at ¶¶ 23-24.

72. Thus, because the same transactions and occurrences underlay both the original Complaint and the Amended Complaint, the claims asserted in the Amended Complaint relate back to the original Complaint and the operative date for statute of limitations purposes is the date of the filing of the Complaint, *i.e.*, December 23, 2020. *See* Complaint (NYSCEF Doc. No. 1).

73. Nor is it of any moment for purposes of the relation back doctrine that (i) Summa was not a party to the original Complaint; or (ii) an intentional infliction of emotional distress claim was not pled in the original Complaint. "The relation-back doctrine 'enables a plaintiff to correct a pleading error – *by adding either a new claim or a new party* – after the statutory limitations period has expired.'" *OneWest Bank N.A. v. Muller*, 189 A.D.3d 853, 138 N.Y.S.3d 165 (2d Dep't 2020) (emphasis added). Here, where Schulder is the principal of Summa, Summa was a party in the Bankruptcy Action, and the facts underlaying the intentional infliction of emotional distress claim were pled in the original Complaint albeit under a different cause of action, there is no question that the relation back doctrine applies. *See id.* (where

22

added parties were on notice and should have reasonably concluded that they should have been named in the action, relation back doctrine held to apply).

74.     Bearing the relation back concept in mind, the law is clear that "[t]he statute of limitations begins to run on the date of injury or when all of the elements of the tort could be truthfully alleged." *Sapienza v. Notaro*, 172 A.D.3d 1418, 102 N.YS.3d 291 (2d Dep't 2019).

75.     While Summa may have filed its fraudulent fee application in the Bankruptcy Court on November 27, 2019, Plaintiff did not submit opposition to the fee application until December 13, 2019. *See* Exhibit "C" (a copy of Plaintiff's opposition papers filed in the Bankruptcy Court). Summa, of course, could have withdrew its false and fraudulent fee application at any time, including prior to Plaintiff submitting his opposition. Summa, however, did not do so.

76.     Thereafter, in the face of Plaintiff's opposition, Summa neither withdrew its application nor modified its application in any way, thereby continuing with the tortious conduct that underlays the November 27, 2019 fee application. Moreover, as set forth in the pleadings, the fee application was not decided by the Bankruptcy Court until March 17, 2020. *See* Amended Complaint at ¶ 29; SAC at ¶ 31.

77.     Summa, therefore, had the opportunity at any time between November 27, 2019 (the date of the filing of the fee application) and March 17, 2020 (the date of the Bankruptcy Court's decision on the fee application) to withdraw the false and fraudulent fee application. Had Summa done so, Plaintiff would not have been able

23

to plead that the Schulder Defendants' conduct was "extreme and outrageous" or done with the intent to cause severe emotional distress, both of which are elements of an intentional infliction of emotional distress claim. *See, e.g., Marchionni*, 22 A.D.3d at 814.

78.     Summa, however, never did so at any time prior to March 17, 2020 (or at any time thereafter for that matter). Thus, because Plaintiff could not have pled all of the elements of an intentional infliction of emotional distress claim until there was a decision on the motion without the Schulder Defendants' withdrawing their application, the statute of limitations could not have begun to run until the date of the decision, March 17, 2020. *See, e.g., Snyder v. Town Insulation, Inc.*, 81 N.Y.2d 429, 432-433 (1993) ("As a general proposition, the cause of action does not accrue until an injury is sustained. Stated another way, the accrual occurs when the claim becomes enforceable, *i.e., when all elements of the tort can be truthfully alleged in a complaint.*") (emphasis added).

79.     Moreover, the continuing tort doctrine supports Plaintiff's position that the second cause of action is timely. The continuing tort doctrine permits claims based on "wrongful conduct occurring more than one year prior to the commencement of the action, so long as the final actionable event occurred within one year of the suit." *See Estreicher v. Oner*, 148 A.D.3d 867, 868, 49 N.Y.S.3d 530 (2d Dep't 2017). The Appellate Division, First Department has held that "allegations of intentional infliction of emotional distress alleged in [an] amended complaint are 'governed by the continuing tort doctrine, permitting the plaintiff to rely on wrongful conduct

24

occurring more than one year' prior to seeking leave to amend." *Brummer v. Wey*, 187 A.D.3d 566, 566, 135 N.Y.S.3d 4 (1st Dep't 2020); *see also Ain v. Glazer*, 257 A.D.2d 422, 423, 683 N.Y.S.2d 241 (1st Dep't 1999) (holding the cause of action for intentional infliction of emotional distress was not time-barred where the plaintiff set forth a continuing course of conduct extending into the one-year period immediately preceding commencement of his action).

80.     Thus, while the Schulder Defendants filed the fraudulent fee application on November 27, 2019, the harm caused by the false and fraudulent allegations contained in the fee application could have been ameliorated by the Schulder Defendants withdrawing the application at any point in time up until the Bankruptcy Court issued its decision on the fee application, which did not occur until March 17, 2020.  In other words, the Schulder Defendants' wrongful conduct giving rise to the intentional infliction of emotional distress claim did not start and stop on November 27, 2019, as the Schulder Defendants suggest; rather, it started on November 27, 2019 and continued up to at least the date of the Bankruptcy Court's decision on the fee application on March 17, 2020.

81.     Because Plaintiff filed the Complaint within one year of March 17, 2020, therefore, the intentional infliction of emotional distress claim was timely asserted under the continuing tort doctrine.

82.     The Summa Defendants cite *Wilson v. Erra*, 94 A.D.3d 756, 942 N.Y.S.2d 127 (2d Dep't 2012) to argue that "Plaintiff's cause of action . . . accrued upon the filing of the allegedly false application for fees."  *See* SD Mem. at pp. 2-3.

*Wilson*, however, does not help the Summa Defendants. In *Wilson*, fourteen (14) years after the defendant testified against the plaintiff at a criminal trial, the plaintiff sued the defendant for defamation and intentional infliction of emotional distress. The Appellate Division, Second Department found these claims to be time-barred given the substantial passage of time and because "[a] cause of action alleging defamation accrues at the time the alleged statements are originally uttered."

83.     In contrast, as set forth above, the Appellate Division, First Department has held that a claim of intentional infliction of emotional distress is subject to tolling based upon the continuing tort doctrine, and the tort here continued until at least March 17, 2020 due to the Summa Defendants' failure to withdraw their false statements to the Bankruptcy Court. Thus, *Wilson* is not apposite and not helpful to the Summa Defendants.

84.     As a result, the Schulder Defendants' argument that Plaintiff's claim of intentional infliction of emotional distress is time-barred should be rejected in all respects.[4]

_____

[4] The Summa Defendants also argue that Plaintiff's alleged failure to assert the intentional infliction of emotional distress claim "against Mr. Greenwald demonstrates . . . that plaintiff knows that he does not have any valid claim for emotional distress and that his sole goal is to force the Moving Defendants to incur legal fees." *See* SD Mem. at p. 2. Respectfully, Plaintiff has not asserted an intentional infliction of emotional distress claim against Greenwald because it has stated a different claim against Greenwald given his status as the attorney representing Summa in the Bankruptcy Court – namely, a claim under Judiciary Law § 487. *See* Amended Complaint at ¶¶ 33-43; SAC at ¶¶ 45-55. Plaintiff, of course, is free to plead alternative, inconsistent theories under the CPLR. *See* CPLR 3014; *Kerzhner v. G4S Government Solutions, Inc.*, 138 A.D.3d 564, 30 N.Y.S.3d 620 (1st Dep't 2016) ("a plaintiff may plead alternative, inconsistent theories").

C.    Plaintiff has Adequately Pled a Claim Against the Schulder Defendants

85.    A cause of action for intentional infliction of emotional distress consists of four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress. *See Marchionni*, 22 A.D.3d at 814.

86.    A plaintiff's allegations that the defendants "intentionally and maliciously engaged in a pattern of harassment, intimidation, humiliation and abuse," causing him an unjustified loss of revenue and emotional harm is sufficient to support the cause of action for intentional infliction of emotional distress. *See Shannon v. MTA Metro-North R.R.*, 269 A.D.2d 218, 219, 704 N.Y.S.2d 208 (1st Dep't 2000) (finding that, assuming the truth of the facts pleaded, plaintiff adequately alleged the cause of action for intentional infliction of emotional distress).

87.    The Summa Defendants do not argue, because they cannot do so, that Plaintiff has not pled extreme and outrageous conduct.  Instead, without citation to any authority, the Summa Defendants contend that "the court can determine, as a matter of law," that the alleged conduct of the Summa Defendants of directing or authorizing Greenwald "to file even a 'false' fee application is not 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *See* SD Mem. at p. 4.

88.     Courts, however, have held to the contrary for a number of different reasons.

89.     Perhaps most importantly, the Appellate Division, First Department has held, ironically in a case relied upon by the Summa Defendants (*see* SD Mem. at p. 4), that the Supreme Court is acting within its discretion in leaving the issue of the outrageousness of a defendant's conduct to be decided by the jury at trial. *See 164 Mulberry Street Corp. v. Columbia University*, 4 A.D.3d 49, 771 N.Y.S.2d 16 (1st Dep't 2004) ("Although vested with the power to do so, the motion court declined at this pre-answer stage of the proceedings to find that the concededly general allegations in this case were inadequate as a matter of law. *Rather, the court found the issue of outrageousness more appropriately to be decided by a jury.* Although there may be some inconsistency in that formulation, in that the court's phrasing implies a willingness to revisit the matter as a law issue at another stage of the proceedings, *we do not find legal error in the court's decision to defer decision on the matter.*") (emphasis added).  The Appellate Division, Second Department has also held as much. *See Halio v. Lurie*, 15 A.D.2d 62, 66, 222 N.Y.S.2d 759 (2d Dep't 1961) (stating that "[i]t will be for the trier of the facts to determine whether . . . the conduct of the defendant was such that it may be said that it went beyond all reasonable bounds of decency").[5]

---

[5] Citing *Kovkov v. Law Firm of Dayrel Sewll, PLLC*, 187 A.D.3d 505, 134 N.Y.S.3d 15 (1st Dep't 2020), the Summa Defendants argue that "[c]ourts do not hesitate to dismiss, on a pre-answer motion, claims asserting intentional infliction of emotional distress where the court determines, as a matter of law, that the conduct does not meet the stringent standard required." *See* SD Mem. at p. 4.  The Appellate Division, First Department's decision in *164 Mulberry Street*, and the Appellate Division, Second Department's decision in

28

90.     In any event, at this stage in the litigation, the allegations set forth in the Amended Complaint are sufficient to plead outrageous conduct on the part of the Schulder Defendants so as to state a claim for intentional infliction of emotional distress. *See Nigro v. Pickett*, 39 A.D.3d 720, 721-22, 833 N.Y.S.2d 655 (2d Dep't 2007) (holding the plaintiffs set forth a claim for intentional infliction of emotional distress on behalf of the individual plaintiff where defendants made false accusations against the plaintiff and threatened to make the accusations public); *Vasarhelyi v. New School for Social Research*, 230 A.D.2d 658, 661, 646 N.Y.S.2d 795 (1st Dep't 1996) (finding defendants' threats of groundless prosecution by engaging criminal attorneys to conduct an investigation brought the matter within extreme and outrageous behavior).

91.     Indeed, the Appellate Division, First Department held in *Vasarhelyi*, 230 A.D.2d at 661, in describing the standard to be applied in determining whether the conduct pled is sufficiently outrageous so as to state a claim for intentional infliction of emotional distress: "As a leading authority states the principle, '[t]he extreme and outrageous nature of the conduct may arise not so much from what is done as from abuse by the defendant of some relation or position which gives the defendant actual or apparent power to damage the plaintiff's interests.'" *See* 230 A.D.2d at 661 (*quoting* Prosser & Keeton, Torts § 12, at 61 [5th ed]). The Appellate Division, First Department found in *Vasarhelyi* that where "the acts complained of"

---

*Halio*, suggest otherwise. In any event, *Kovkov* is of no relevance here, as the court's reported decision does not contain any details about the pleading that was allegedly insufficient.

consisted of mere threats of "groundless litigation," "'assuming the truth of the facts pleaded, the acts complained of could be found by a trier of fact to amount to extreme and outrageous conduct which cannot be tolerated in a civilized community and that they, therefore, adequately state a cause of action for intentional infliction of emotional distress."[6]

92.     Here, Plaintiff has pled something far more egregious than mere threats of groundless litigation.   Indeed, Plaintiff alleges, among other things, that the Schulder Defendants outright lied to the Bankruptcy Court in order to harass Plaintiff, make Plaintiff spend money responding to the Schulder Defendants' false submissions and that Schulder, an attorney, violated a number of attorney disciplinary rules in an effort to harass and intimidate Plaintiff.   *See* Amended Complaint at ¶¶ 47-57; SAC at ¶¶ 59-69.

93.     It goes without saying that such violations, in particular those involving fraud and dishonesty upon a court, should not be taken lightly.   As an attorney, respect for the legal system and the judiciary is fundamental to participation in that system. *Matter of Davey*, 111 A.D.3d 207, 211, 973 N.Y.S.2d 67 (1st Dep't 2013). Violations of attorney disciplinary rules warrant the "utmost seriousness since they impinge[] on" the administration of justice in the courts. *In re Goffen*, 103 A.D.2d 197,

---

[6] The Appellate Division, First Department's holding in *Vasarhelyi* that threats of "groundless litigation" can be sufficient to support an intentional infliction of emotional distress claim stands as a complete rebuttal to the Schulder Defendants' policy-based argument that "a ruling that the direction or authorization to file a 'false' fee application supports a claim of intentional infliction of emotional distress against an attorney's client would open the floodgates to retaliatory litigation." *See* SD Mem. at p. 5.   Indeed, the Appellate Division, First Department has already held otherwise.

30

201, 479 N.Y.S.2d 222 (1st Dep't 1984). Violations of attorney disciplinary rules "demonstrate [a] disregard for the rule of law as well as the ethical standards of the legal profession." *Matter of Robb*, 287 A.D.2d 1, 731 N.Y.S.2d 437 (1st Dep't 2001).

94.     In light of the allegation of deliberate misrepresentations being made to the Bankruptcy Court and the filing of false documents with the Bankruptcy Court made by the Schulder Defendants for an improper purpose, the standard of conduct sufficient to plead an intentional infliction of emotional distress claim, particularly at this preliminary stage of the proceedings, is satisfied as a matter of law.

95.     The Summa Defendants also argue, again without citation to a single authority (a theme that will be consistent throughout these opposition papers), that "[a]s a matter of law, the mere direction or authorization to file a fee application, even if false, could not have been done with the 'intent to cause, or disregard of a substantial probability of causing, severe emotional distress.'" *See* SD Mem. at p. 5. The Schulder Defendants, however, do not argue that Plaintiff failed to plead the requisite intent. That is because Plaintiff has done so. *See* Amended Complaint at ¶ 52; SAC at ¶ 64. That is all that matters at this preliminary stage of the proceedings. *See, e.g., Morone*, 50 N.Y.2d at 484, cited *supra* at ¶ 59.

96.     The Summa Defendants argue, again without citation to authority, that "the plaintiff does not allege a 'campaign of harassment or intimidation,'" but rather he purportedly only alleges "a 'one off' court filing." *See* SD Mem. at p. 5. This, however, is simply not true, as Plaintiff does in fact allege "a deliberate and malicious pattern of harassment of Plaintiff and as part of a campaign intended to intimidate

31

Plaintiff." *See* Amended Complaint at ¶ 51; SAC at ¶ 63. Again, that is all that matters at this preliminary stage of the proceedings. *See, e.g., Morone*, 50 N.Y.2d at 484, cited *supra* at ¶ 59.

97.     But even if more than a "one-off" act was required to be pled, it has been alleged. Specifically, in the SAC Plaintiff alleges as part of its intentional infliction of emotional distress claim that the Schulder Defendants are continuously using the judicial process to harass Plaintiff, including by serving Jewish charities and other Jewish organizations with baseless "demands" for the purpose of "harm[ing] Plaintiff's reputation within the Jewish business community". *See* SAC at ¶¶ 43-44; *see also Vasarhelyi*, 230 A.D.2d at 661-662 (where the defendant "was in a position giving him apparent power to impair plaintiff's professional standing," held that "threats of unjustified criminal charges or groundless litigation" were sufficient to qualify "as outrageous").[7]

98.     The Summa Defendants also argue, again without citation to any authority, that Greenwald, as a licensed attorney, "was required to exercise independent judgment" and, thus, even if the Summa Defendants directed the filing of a false application, "Mr. Greenwald's decision to file the application was based on the exercise of independent professional judgment which constitutes an intervening

---

[7] The Summa Defendants also argue, citing *164 Mulberry Street*, 4 A.D.3d at 49, that claims of intentional infliction of emotional distress are subject to dismissal "where the plaintiff does not allege a 'campaign of harassment or intimidation.'" *See* SD Mem. at p. 4. Plaintiff, however, has alleged just that. *See supra* at ¶¶ 95-97. Indeed, the Summa Defendants' reliance on *164 Mulberry Street* is a bit puzzling given the fact that the Appellate Division, First Department in that case concluded that where such allegations could be found in the pleadings "there is a sufficient basis to allow a jury to decide whether the conceded conduct in this case was outrageous so as to satisfy the requisite standard."

32

and superseding cause [that] breaks any causal chain of damage." *See* SD Mem. at pp. 4-5. Once again, however, the Summa Defendants do not argue that Plaintiff has failed to plead causation – *i.e.*, a connection between the Summa Defendants' gross misconduct and Plaintiff's emotional distress and damages. That is because, as set forth above, Plaintiff has done so. *See* Amended Complaint at ¶¶ 49-50; SAC at ¶¶ 61-62. Again, that is sufficient at this preliminary stage of the proceedings. *See, e.g., Morone*, 50 N.Y.2d at 484, cited *supra* at ¶ 59.

99. Finally, although acknowledging that Plaintiff alleges that the Summa Defendants' misconduct has caused him to "experience[] 'anxiety'" and to "suffer[] 'severe emotional distress,'" the Summa Defendants, citing *DeRaffele v. 210-22-230 Owners Corp.*, 33 A.D.3d 752, 823 N.Y.S.2d 202 (2d Dep't 2006), argue that these allegations are "conclusory." *See* SD Mem. at pp. 5-6. The Schulder Defendants' reliance upon *DeRaffele* is puzzling, to say the least insofar as *DeRaffele* did not involve a cause of action for intentional infliction of emotional distress. Instead, that case involved a cause of action for breach of fiduciary duty, which is not alleged by Plaintiff here. In any event, Plaintiff's allegations of anxiety are sufficient to defeat dismissal at this stage as it is for the trier of fact to determine whether evidence of severe emotional distress can be found. *See Halio*, 15 A.D.2d at 66 (stating that "[i]t will be for the trier of the facts to determine whether such injuries were actually suffered").

33

## CONCLUSION

100.    For all of the foregoing reasons, Plaintiff respectfully requests that his cross-motion for leave to amend be granted in its entirety and that the Schulder Defendants' motion to dismiss be denied in its entirety.

101.    Pursuant to 22 NYCRR § 130-1.1a, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief, and after reasonable inquiry, the contentions contained in this affirmation and the annexed documents are not frivolous.

**WHEREFORE**, Plaintiff respectfully requests that his cross-motion be granted in its entirety, that the Schulder Defendants' motion be denied in its entirety, and that Plaintiff be granted such other and further relief as the Court shall deem just and proper.

Dated:     Lake Success, New York
           May 28, 2021

                            ABRAMS, FENSTERMAN, FENSTERMAN,
                            EISMAN, FORMATO, FERRARA, WOLF &
                            CARONE, LLP
                            By: */s/ Christopher A. Gorman*
                                Christopher A. Gorman
                                3 Dakota Drive, Suite 300
                                Lake Success, New York 11042
                                (516) 328-2300
                                cgorman@abramslaw.com
                                *Attorneys for Plaintiff*

## ATTORNEY CERTIFICATION REGARDING WORD LIMIT

I, Christopher A. Gorman, an attorney duly admitted to practice law before the courts of the State of New York, hereby certify that this Affirmation of in Support of Plaintiff's Cross-Motion For Leave To Amend And In Opposition To The Defendants' Motion To Dismiss complies with the word count limit set forth in Rule 202.8-b(a) because it contains 8,896 words, excluding the parts of the Affirmation exempted by Rule 202.8-b(b). In preparing this certification, I have relied on the word count of the word processing system used to prepare this affirmation.

*/s/ Christopher A. Gorman*
Christopher A. Gorman

35